845 F.2d 326
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Willie LEE, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1575.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1988.
 
 Before KEITH, BOYCE F. MARTIN, Jr., and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Willie Lee, the plaintiff, appeals the district court's decision affirming the Secretary of Health and Human Services's denial of social security disability benefits. Plaintiff argues on appeal that the administrative law judge erred because it: (1) did not give proper weight to claimant's subjective complaints (2) failed to consider all of the claimant's impairments in combination as required by law; and (3) determined the claimant was not disabled when there was not substantial evidence to that effect. After a review of the facts, we will address each of these contentions individually.
 
 
 2
 Plaintiff applied for social security disability insurance benefits on October 23, 1984, alleging that he had become disabled and unable to work on February 1, 1979, at age thirty-six. Plaintiff claimed that he suffered heart and lung problems, hypertension and a severe anxiety problem. The plaintiff has completed eight years of schooling. His past relevant work was as an assembly line worker and as a sweeper with Massey Ferguson. The plaintiff claims, however, that he is no longer able to perform these jobs or any job because of his ailments.
 
 
 3
 At his hearing before the administrative law judge, claimant testified that he suffered from chest pains, which were accompanied by dizzy spells. These pains allegedly occurred up to five times a day and could only be relieved by nitroglycerin, which resulted in chronic dizziness. In 1980, plaintiff underwent three consultative examinations and was diagnosed as hypertensive and suffering from complete right bundle branch block, chest pain of non-cardiac origin and obstructive lung disease. Plaintiff was hospitalized in June 1981 with dizziness of unknown origins. A CT scan and EEG were normal, and plaintiff improved quickly during his three days in the hospital.
 
 
 4
 Dr. Lester Jones, who examined plaintiff in February, 1980, and diagnosed him as suffering from hypertension, noted that plaintiff would be limited to a sedentary job until his hypertension was under better control.
 
 
 5
 In August 1982, Dr. James Kohlenberg examined plaintiff on behalf of the Secretary. He diagnosed anxiety, possible hyperventilation syndrome, possible chronic obstructive pulmonary disease, atypical chest pain, and right bundle branch block. Plaintiff's blood pressure at this exam was 120/80 and 130/85. Dr. Kohlenberg recommended further treatment for Lee's anxiety as well as for possible alcoholism. Dr. Kohlenberg recommended that plaintiff avoid dangerous heights and moving machinery because of his complaints of lightheadedness.
 
 
 6
 On July 5, 1983, plaintiff was examined by Dr. Sheldon Kaftan who performed a pulmonary function study. The study showed a marked obstructive airway disease. Dr. Kaftan concluded that plaintiff was not capable of gainful employment due to probable pulmonary fibrosis secondary to pneumoconiosis. Plaintiff told Dr. Kaftan that he had suffered two heart attacks, one in 1976 and one in 1977. At the time of this examination, plaintiff's blood pressure was 160/100. Plaintiff was hospitalized in March, 1984 with complaints of chest pain. His discharge diagnoses, however, were ethanol hepatitis, acute and chronic alcoholism, with additional diagnoses of chronic obstructive lung disease, essential hypertension and a depressive-anxiety reaction. Hospital records indicate that plaintiff was medicated for agitation or "impending DT's." Plaintiff's blood pressure had risen to 150/100, but plaintiff reported that he had stopped taking his blood pressure medication. A pulmonary function test, performed during this hospitalization, showed a mild uneven air distribution with a mild air flow obstruction. Plaintiff's cooperation was rated poor. A Holter EKG monitoring showed a normal rhythm with no electrocardiographic changes associated with his complaints of chest pain. Dr. Paul Fortuna, who had treated plaintiff since March 1984, opined in September 1985 that plaintiff was totally disabled because of chest pains and difficulty breathing.
 
 
 7
 The plaintiff has also been treated by a psychiatrist since February, 1981. Dr. Hyman Kurtz treated plaintiff on a monthly basis since February 1981. In August, 1981, Dr. Kurtz wrote that plaintiff was quite anxious, somewhat depressed, not functioning well at home, had a poor self image, was angry at his current life and had little hope of any change. Dr. Kurtz diagnosed a dysthymic disorder and opined that with his attitude it would be difficult for Lee "to compete in the marketplace to obtain and hold gainful employment."
 
 
 8
 One year later, Dr. Kurtz wrote that he continued to treat plaintiff on a monthly basis, and that he diagnosed a generalized anxiety disorder with a poor prognosis. Plaintiff was taking 10 mg. of Valium per day. Dr. Kurtz noted that plaintiff suffered no delusions, kept his appointments, and was oriented to time, place, and person. While it appears that plaintiff told Dr. Kurtz on several occasions about his drinking, it also appears from the notes that, for the period from September, 1982 through June, 1983, plaintiff consistently denied that he was drinking.
 
 
 9
 At the hearing on January 14, 1986, the Secretary considered in addition to the above evidence, the testimony of the plaintiff, Dr. Lewis, a medical advisor, and Dr. Fotiu, a vocational expert. Plaintiff testified at trial that he never drank to excess and that he never had a problem with alcoholism. Plaintiff also reported that his most serious problems were chest pain and dizzy spells which he experienced up to five times a day. Plaintiff admitted that the Valium he was prescribed relieved his nervousness. Dr. Lewis testified that he did not believe that plaintiff's chest pains were of cardiac origin. Dr. Lewis noted a right bundle branch block may have no effect at all on cardiac function or life expectancy. Other evidence of a non-cardiac origin for this pain, according to Dr. Lewis, was plaintiff's performance in a 1976 stress test, which demonstrated a good exercise tolerance. Dr. Lewis also noted that plaintiff complained of sharp chest pain that was unrelated to exertion, and these symptoms were not typical of chest pain of cardiac origin. He also noted that dizziness is a common side effect of nitroglycerin.
 
 
 10
 With respect to plaintiff's obstructive pulmonary disease, Dr. Lewis testified that the results of the test performed at Bi-County Community Hospital on March 22, 1984 indicated only a mild air flow obstruction, while the earlier test on July 5, 1983, performed by Dr. Kaftan, was interpreted as showing a rather marked obstruction. According to Dr. Lewis, even the July 5, 1983 test results would not preclude plaintiff from all gainful activity. Dr. Lewis testified that considering plaintiff's physical impairments, plaintiff would have no difficulty with sitting or standing, and he would be able to walk for an indefinite period, but he would be limited to walking at a moderate pace on level ground to prevent shortness of breath. Thus, Dr. Lewis concluded in his testimony that plaintiff would have no difficulty with light work.
 
 
 11
 Dr. Fotiu, the vocational expert who testified at the hearing, observed that plaintiff's past work as an assembler would be classified as medium, unskilled work. His position as a sweeper was heavy, unskilled work. Dr. Fotiu told the administrative law judge that given plaintiff's age, education, past work, the need to avoid unprotected heights and dangerous moving machinery, and his current ability to perform light work or sedentary work, claimant could perform between 7,000 and 12,000 jobs in the Detroit area. When Dr. Fotiu was instructed to credit all plaintiff's subjective testimony, he concluded then that plaintiff would be unable to perform any of the above noted jobs, primarily because of his nervousness, dizziness and headaches.
 
 
 12
 Having reviewed the relevant evidence in the record, we turn now to the assertions of error argued on appeal by plaintiff. Plaintiff's first argument for why the Secretary erroneously denied him social security disability benefits rests on the proposition that the Secretary did not give proper weight to his subjective complaints. We note that a reviewing court must give special deference to the credibility determinations made by an administrative law judge because they are "invaluable and should not be disregarded lightly." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir.1984). The proper standard for evaluating subjective complaints has also been addressed by statute in the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98-460, Sec. 3 (enacted October 9, 1984). That statute provides that a claimant's reports of pain and other subjective complaints are not conclusive and objective evidence of disability must be considered in conjunction with such complaints. 42 U.S.C. Sec. 423(d)(5)(A).
 
 
 13
 In Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986), this court established a two-pronged analysis for reviewing subjective complaints of pain by disability claimants. If there is objective medical evidence of an underlying medical condition, the Secretary must examine: (1) whether the objective medical evidence confirms the severity of the alleged complaint or (2) whether the objectively established medical condition is of such a level of severity that it could reasonably be expected to produce the symptom. We believe the Secretary's decision fulfills this requirement. We do not believe plaintiff has borne his burden of proof of demonstrating an underlying heart condition that would account for his complaints of chest pain. We note that plaintiff apparently never complained of dizziness and hour-long headaches to his treating physicians. They are not mentioned in the records of Dr. Fortuna nor the records from his 1984 hospitalization. Drs. Jones and Kumar were not told of such headaches either. Furthermore, even if plaintiff does suffer from some headaches or dizziness as a result of nitroglycerin, it is not clear that plaintiff needs to take nitroglycerin given that there is no convincing evidence that he suffers pain that is of a cardiac origin. While plaintiff testified that his most serious problem preventing him from working was his heart condition, there is no objective clinical evidence showing that he suffers from a myocardial infarction. Also, a Holter EKG test was normal and within normal ranges. Drs. Kumar and Kohlenberg described claimant's chest pain as "atypical." Dr. Kaftan testified that he was not certain whether the chest pain was angina. Dr. Lewis testified that plaintiff's description of his chest pain was not typical of cardiac pain, and Dr. Kohlenberg reported that the main heart impairment, right bundle branch block, might be idiopathic and asymptomatic. With respect to plaintiff's complaints that he suffers from a severe shortness of breath, Dr. Lewis testified that, even assuming the validity of these claims, plaintiff would still be able to perform light work. Because of this objective evidence, we are compelled to reject plaintiff's argument that the Secretary did not give proper weight to his subjective complaints.
 
 
 14
 The plaintiff's second assertion of error is that the Secretary failed to consider all of the claimant's impairments in combination as required. This is explicitly contradicted by the administrative law judge who had found that "considering the claimant's severe and nonsevere impairments both alone and in combination, the undersigned finds that the claimant has the residual functional capacity to perform a full range of light work." (emphasis added). We find no support in the record for plaintiff's assertion here.
 
 
 15
 The gravaman of plaintiff's appeal is that the determination of the Secretary is not supported by substantial evidence in the record. Under a "substantial evidence" review, this court must decide whether a reasonable mind would accept the evidence of record and the inferences based on that evidence, as adequate to support the administrative law judge's findings. Richardson v. Perales, 402 U.S. 389 (1971). This court may not reweigh the evidence or substitute its judgment for the Secretary's. O'Banner v. Secretary of Health, Education, and Welfare, 587 F.2d 321, 323 (6th Cir.1978).
 
 
 16
 We believe there is substantial evidence in the record for the Secretary's determination that plaintiff was not disabled. With respect to plaintiff's claims that he suffers from a cardiac impairment, there is abundant evidence to the contrary. Besides misleading his doctors by informing them that he had suffered a heart attack in 1976, plaintiff's description of his chest pains was described by numerous doctors as atypical of cardiac pain. Drs. Kumar and Kohlenberg both classified his pain as "atypical" and even Dr. Kaftan noted only the possibility of angina. Plaintiff's physician, Dr. Fortuna, who treated him after the expiration of his insured status, diagnosed coronary insufficiency but apparently did not perform an angiogram, which could have confirmed this diagnosis. Only a coronary angiogram would demonstrate coronary artery disease, and this test has not been recommended or performed by anyone. Dr. Lewis also testified that plaintiff's chest pains were of non-cardiac origin because there was no evidence of myocardial infarctions, because he has good exercise tolerance, and because his descriptions of the chest pain as sharp and unrelated to exertion were atypical of cardiac pain.
 
 
 17
 With respect to plaintiff's chronic obstructive pulmonary disease, we again believe the Secretary's determination, that it did not render plaintiff disabled, is supported by substantial evidence. While a 1983 test did show plaintiff suffering from a marked obstruction, the test in 1984 indicated that he only suffered from a mild obstruction. Furthermore, his cooperation was rated "poor" during the 1984 test and excellent during the 1983 test. Where there is an inconsistency in the record, it is the role of the Secretary to resolve those inconsistencies and conflicts. It should be again noted that the administrative law judge's residual functional capacity determination of light and sedentary work is consistent even with the 1983 test, which had showed a slightly more significant pulmonary disease, according to the testimony of Dr. Davis, the medical advisor.
 
 
 18
 Finally, the plaintiff also testified that he would be unable to perform any job because of his nerves. The Secretary found, however, that the evidence in the record failed to document that his nerves would significantly impair his ability to perform light and sedentary work. Plaintiff had a prescription for 10 mg. per day of Valium to relieve him of his anxieties. We note that the Secretary's determination that plaintiff's nervousness would not affect his ability to perform substantial gainful activity is buttressed by plaintiff's testimony that he only received twenty minutes of "treatment" a month. Plaintiff's memory and mental activity were reported intact, and he suffered no hallucinations or delusions. Finally, we note that while Dr. Kurtz, the plaintiff's treating psychiatrist, wrote in 1981 that plaintiff would have difficulty competing in the marketplace "to obtain and hold gainful employment" because of his anxiety and depression, he also reported that plaintiff's anxiety and depression did not cause any long term functional limitations other than sleeplessness and nervousness. The Secretary's determination of disability must rest on the test of whether the claimant has retained the residual functional capacity to perform work that exists in the national economy. See 20 C.F.R. Sec. 404.1566(c) (1987). We believe the Secretary's determination that plaintiff was not disabled by any mental impairment is supported by substantial evidence.
 
 
 19
 Accordingly, we affirm the Secretary's decision denying the plaintiff social security disability benefits.